ORIGINAL

Approved: _____
MARGARET GRAHAM/ KARIN PORTLOCK
Assistant United States Attorneys

Before: HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York



U.S. DISTRICT COURT
FILED
MAR 1 1 2016
S.D. OF N.Y.

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

    - v. -                          :

MOHAMMAD MALIK and                :
JASWANTE KOR,
    a/k/a "Sumon Kor,"            :
    a/k/a "Sumon Singh,"
                                  :

        Defendants.            :

- - - - - - - - - - - - - - - - X

SEALED COMPLAINT

DOC # _____

Violation of
18 U.S.C. §§ 1029(a)(2),
(b)(2), and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JOHN KAROUNOS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Access Device Fraud)

    1.  From at least in or about January 2012 up to and including the present, in the Southern District of New York and elsewhere, MOHAMMAD MALIK and JASWANTE KOR, a/k/a "Sumon Kor," a/k/a "Sumon Singh," the defendants, and others known and unknown, knowingly and with intent to defraud did traffic in and use unauthorized access devices and by such conduct did obtain something of value aggregating $1,000 and more, to wit, MALIK and KOR used credit cards obtained by fraudulent means to unlawfully obtain over $500,000.

    (Title 18, United States Code, Sections 1029(a)(2) and 2.)

COUNT TWO
(Conspiracy to Commit Access Device Fraud)

2.    From at least in or about January 2012 up to and
including the present, in the Southern District of New York and
elsewhere, MOHAMMAD MALIK and JASWANTE KOR, a/k/a "Sumon Kor,"
a/k/a "Sumon Singh," the defendants, the defendants, and others
known and unknown, willfully and knowingly did combine,
conspire, confederate, and agree together and with each other to
commit access device fraud, in violation of Title 18, United
States Code, Section 1029(a)(2).

3.    It was a part and an object of the conspiracy that
MOHAMMAD MALIK and JASWANTE KOR, a/k/a "Sumon Kor," a/k/a "Sumon
Singh," the defendants, and others known and unknown, knowingly
and with intent to defraud would and did traffic in and use
unauthorized access devices, and by such conduct did obtain
something of value aggregating $1,000 and more, to wit, MALIK
and KOR used credit cards obtained by fraudulent means to
unlawfully obtain over $500,000.

Overt Act

4.    In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt act, among others,
was committed in the Southern District of New York and
elsewhere:

a.    On or about January 5, 2013, a credit card
fraudulently obtained by MOHAMMAD MALIK and JASWANTE KOR, a/k/a
"Sumon Kor," a/k/a "Sumon Singh," the defendants, was used to
charge $4,500 at a store in New York, New York.

(Title 18, United States Code, Sections 1029(b)(2).)

The bases for my knowledge and the foregoing charge
are, in part, as follows:

5.    I am a Special Agent with the FBI and have worked on
numerous criminal investigations involving bank fraud, credit
card fraud, and identity theft.

6.    I have been involved in the investigation of the
offenses charged in this Complaint. I am familiar with the
facts and circumstances set forth below from my personal
participation in the investigation, including my review of

pertinent documents, and from my conversations with fellow agents and other witnesses.  Because this affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included details of every aspect of the investigation. Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise noted.

7.    I am familiar with, among other financial frauds, identity theft schemes wherein the conspirators create a "synthetic identity" by taking a fake name and/or date of birth and combining this information with either (i) another person's Social Security Number ("SSN"); or (ii) a SSN that has not yet been issued to a person.  The conspirators then open credit card accounts and bank accounts using this synthetic identity, and use these accounts to commit various financial frauds.

8.    The conspirators often use a credit card opened using a synthetic identity (the "Synthetic Credit Card") to "purchase" fictitious goods at a collusive merchant.  The credit card company is billed by the merchant for the non-existent goods, and the cardholder and the collusive merchant then split the resulting proceeds from the credit card company.

9.    Often, the conspirators make fraudulent "payments" to the Synthetic Credit Card, using fraudulent checks from the account of a different synthetic identity.  Because the credit card company believes the account holder to be paying down his or her balance, the company increases the spending limit on the Synthetic Credit Card.  The credit card company only later realizes that the checks are fraudulent, after it has already increased the spending limit.

10.    Once the spending limits are sufficiently high for the Synthetic Credit Cards associated with a synthetic identity, the conspirators charge all Synthetic Credit Cards for that identity up to their spending limits and stop using that synthetic identity.

11.    From reviewing records obtained from Barclay Bank, I have learned, among other things, the following:

a.    On or about May 17, 2015, a Barclay credit card was issued to "Roman Boluch" (the "Boluch Barclay Card").   The credit card application used a Social Security Number ended in - 1002 (the "1002 Social Security Number") and an address on Third

3

Street in Baltimore, Maryland ("the Maryland Address"). The application was submitted using an IP address beginning with 67 (the "67 IP address"), which was registered to the home address of MOHAMMAD MALIK, the defendant, in the name of MALIK's wife.

        b.   On or about May 27, 2015, a Barclay credit card was issued to "Roman Bloch" (the "Bloch Barclay Card"). The credit card application used the 1002 Social Security Number and the Maryland Address, and was submitted using the 67 IP address.

        c.   On or about June 30, 2015, a charge for approximately $652.29 was made on the Boluch Barclay Card at Fame Global Corporation.

        d.   On or about July 1, 2015, a charge for approximately $728.42 was made on the Boluch Barclay Card at Fame Global Corporation.

        e.   On or about July 2, 2015, a charge for approximately $782.28 was made on the Boluch Barclay Card at Fame Global Corporation.

   12.   From reviewing records obtained from Bank of America, I have learned, among other things, the following:

        a.   Bank of America Merchant Services was the merchant processor for the Fame Global Corporation transactions set forth in paragraphs 11 and 12, above.

        b.   The funds from these transactions were wired to a Bank of America business account in the name of Fame Global Corporation. JASWANTE KOR, a/k/a "Sumon Kor," a/k/a "Sumon Singh," the defendant, opened this account as the President of Fame Global Corporation, and is the only person listed on the signature card.

   13.   From reviewing records obtained from Chase Bank, I have learned, among other things, the following:

        a.   On or about June 28, 2015, a Chase account was opened in the name of "Somin Bloch," using a Social Security Number ending in 1020 (the "1020 Social Security Number") and the Maryland Address (the "Bloch Chase Account").

b.    In or about July 2015, a total of approximately $26,013 of purchases and $26,450 of payments were made to the Bloch Chase Account.  All of the payments were returned, including three checks drawn on a Wells Fargo account in the name of "Somin Bloch" (the "Bloch Wells Fargo Account").

c.    On or about July 13, 2015, an individual that I believe based on bank surveillance photographs to be JASWANTE KOR, a/k/a "Sumon Kor," a/k/a "Sumon Singh," the defendant, made a payment into the Bloch Chase Account using a fraudulent check from the Bloch Wells Fargo Account.[1]

d.    On or about July 14, 2015, an individual that I believe based on bank surveillance photographs to be MOHAMMAD MALIK, the defendant, made a payment into the Bloch Chase Account using a fraudulent check from the Bloch Wells Fargo Account.[2]

e.    On or about July 15, 2015, an individual that I believe based on bank surveillance photographs to be KOR made a payment into the Bloch Chase Account using a fraudulent check from the Bloch Wells Fargo Account.

14.   From reviewing records obtained from Bank of America, I have learned, among other things, the following:

a.    On or about November 29, 2012, a Bank of America credit card was opened in the name of "Kulgit Singh," (the "Singh BOA Card") using an address in Middle Island, New York (the "Middle Island Address") and listing an alternate customer number ending in -1531 (the "1531 Number").  The application listed Singh's Social Security Number as ending in 7642 (the "7642 Social Security Number").

15.   From reviewing records obtained from Chase Bank, I have learned, among other things, the following:

---

[1] I have compared these bank surveillance photographs to photographs of KOR maintained by the New York State Department of Motor Vehicles.

[2] I have compared these bank surveillance photographs to photographs of MALIK maintained by the New York State Department of Motor Vehicles.

         a.    On or about November 24, 2012, a Chase credit card was opened in the name of "Kulgit Singh," using the Middle Island Address and the 7642 Social Security Number (the "Singh Chase Card").

         b.    On or about January 5, 2013, the Singh Chase Card was charged $4,500 at Hookah Plus, in New York, New York.

16.   I have reviewed the records of a January 12, 2015 transaction conducted at Aria Casino, located in Las Vegas, Nevada, where MOHAMMAD MALIK, the defendant, provided the 1531 Number as his number.

17.   On or about February 12, 2016, I spoke with the owner of the Middle Island Address, who informed me that the tenant from in or about 2012 through 2013 at the Middle Island Address was "Sumon Kor."

18.   From reviewing records obtained from the Social Security Administration, I have learned, among other things, the following:

         a.    The 1002 Social Security Number belongs to a minor who is not named Roman Bloch or Roman Buloch.

         b.    The 1020 Social Security Number belongs to a minor who is not named Somin Bloch.

         c.    The 7642 Social Security Number belongs to an individual who is not named Kuljit Singh.

19.   Based on this information and my familiarity with synthetic identity fraud, I believe that "Roman Bloch," "Roman Buloch," "Somin Bloch," and "Kulgit Singh" are synthetic identities created to perpetrate credit card fraud and bank fraud.

WHEREFORE, the deponent respectfully requests that warrants issue for the arrest of MOHAMMAD MALIK and JASWANTE KOR, a/k/a "Sumon Kor," a/k/a "Sumon Singh," the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

JOHN KAROUNOS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
11th day of March, 2016

HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK